**GENOVA BURNS LLC**
Patrick W. McGovern, Esq.
494 Broad Street
Newark, New Jersey 07102
(973) 533-0777
Attorneys for Defendant,
The Affiliated Physicians and
Employers Health Plan

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLANTIC SHORE SURGICAL ASSOCIATES,<br><br>Plaintiff,<br><br>v.<br><br>QUALCARE, as Administrators and AFFILIATED PHYSICIANS AND EMPLOYERS HEALTH PLAN, JOHN AND JANE DOES 1-10 and ABC CORPORATIONS 1-10,<br><br>Defendants. | Civil Action No.: 3:17-cv-13109-FLW-LHG<br><br><br>**CERTIFICATION OF PATRICK W. McGOVERN IN SUPPORT OF MOTION TO DISMISS COMPLAINT WITH PREJUDICE BY DEFENDANT HEALTH PLAN** |

Patrick W. McGovern, Esq., hereby certifies as follows:

1.    I am an attorney at law of the State of New Jersey and Partner at the law firm of Genova Burns LLC, attorneys for Defendant, The Affiliated Physicians and Employers Health Plan ("Defendant Plan").

2.    I make this certification upon my personal knowledge and in support of Defendant Plan's Motion to Dismiss Complaint With Prejudice.

3.    A true and correct copy of the unpublished decision in *Cohen v. Horizon Blue Cross Blue Shield of New Jersey ("Cohen I")*, 2017 W.L. 685101 (D.N.J. Feb. 21, 2017), is attached hereto as **Exhibit A.**

4.      A true and correct copy of the unpublished decision in *Wayne Surgical Center, LLC v. Concentra Preferred Systems, Inc.*, 2007 W.L. 2416428 (D.N.J. Aug. 20, 2007), is attached hereto as **Exhibit B.**

5.      A true and correct copy of the unpublished decision in *Cohen v. Horizon Blue Cross Blue Shield of New Jersey ("Cohen II")*, 2017 WL 1206005 (D.N.J. Mar. 31, 2017), is attached hereto as **Exhibit C.**

6.      A true and correct copy of the unpublished decision in *North Jersey Brain & Spine Center v. Connecticut General Life Ins. Co.*, 2011 W.L. 4737063 (D.N.J. Oct. 6, 2011), is attached hereto as **Exhibit D.**

7.      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

_____
PATRICK W. McGOVERN, ESQ.

Dated: January 3, 2018

14208308v1 (23198.010)

2

# EXHIBIT A

2017 WL 685101
Only the Westlaw citation is currently available.
**NOT FOR PUBLICATION**
United States District Court,
D. New Jersey.

Jason Cohen, M.D., F.A.C.S. and Professional
Orthopaedic Associates, PA as Assignee
and Designated Authorized Representatives
of Patient AM and Patient AM, Plaintiffs,

v.

Horizon Blue Cross Blue Shield
of New Jersey, Defendants.

Civil Action No. 15-4525
|
Signed 02/21/2017

**Attorneys and Law Firms**

Jonathan Simeon Goodgold, Goodgold Law LLC, East
Hanover, NJ, Mitchell Craig Beinhaker, The Beinhaker
Law Firm, LLC, Millburn, NJ, for Plaintiffs.

Matthew A. Baker, Connell Foley LLP, Cherry Hill, NJ,
for Defendants.

**OPINION**

John Michael Vazquez, U.S.D.J.

**I. INTRODUCTION**

*1 This matter comes before the Court on Plaintiffs'
Jason D. Cohen, M.D. ("Dr. Cohen") and Professional
Orthopaedic Associates, PA's ("POA") (collectively
"Plaintiffs") motion to remand to state court. Defendant
opposes this motion.[1] This motion was decided without
oral argument pursuant to Federal Rule of Civil
Procedure 78 and Local Civil Rule 78.1. The Court has
considered the parties' submissions, and for the reasons
stated below, Plaintiffs' motion is denied.

**II. FACTS[2] AND PROCEDURAL HISTORY**

Dr. Cohen is a board certified orthopedic surgeon with
an office in Tinton Falls, New Jersey. FAC ¶ 1. Dr.
Cohen owns and/or operates POA, a professional medical
association. Id. ¶¶ 1, 2. Patient AM was a patient of

Dr. Cohen and POA. Id. ¶ 4. Defendant is an insurance
company that is "the Plan Administrator for Plaintiff
AM's health insurance plan." Id. ¶ 5. Neither party
contests that the health insurance plan was a plan
governed by the Employee Retirement Income Security
Act ("ERISA"). This matter centers on Defendant's
refusal to pay Plaintiffs for emergency medical services
provided to Patient AM. Plaintiffs are allegedly assignees
and designated authorized representatives of Patient
AM. Id. ¶¶ 15, 31. Plaintiffs do not allege that they
had a separate agreement, whether verbal or written,
with Defendant regarding Plaintiffs provision of medical
services to Patient AM.

On or about July 4, 2014, "[Dr.] Cohen performed
emergency spinal surgery on Patient AM." Id. ¶
20. Plaintiffs allege that the services were "medically
necessary and appropriate according to recognized
medical standards in the community where [Dr.] Cohen
practices medicine." Id. ¶ 22. Subsequently, on July 18,
2014, "Dr. Cohen submitted a claim to Horizon in the
amount of $169,390.00 for the [s]ervices rendered to
Patient AM." Id. ¶ 24. Defendant did not pay the claim.
Id. ¶ 30.[3] "On or about November 24, 2014, POA and Dr.
Cohen filed an appeal [with Defendant] as 'the designated
representative' of patient AM." Id. ¶ 31. By a letter dated
December 22, 2014, Horizon denied the appeal. Id. ¶ 32.
On or about February 26, 2015, POA and Dr. Cohen
submitted a second appeal. Id. ¶ 34. By a letter dated
March 22, 2015, Horizon denied the second appeal. Id.
¶ 36. Subsequently, Plaintiffs brought the present action
seeking to recover the unpaid amounts. Id. ¶¶ 38-42.

*2 On May 15, 2016, Plaintiffs filed a four-count
complaint in the Superior Court of New Jersey against
Defendant, which asserts: (1) Violation of N.J.A.C.
11:24-5.3, (2) Unjust Enrichment, (3) Violation of the
New Jersey Healthcare Information and Technologies
Act ("HINT"), and (4) Misrepresentation. D.E. 1., Ex.
A. On June 26, 2015, Horizon removed the action to
this Court, alleging federal question jurisdiction on the
grounds that all of the state law claims asserted in the
complaint were preempted by ERISA. Id. On July 17,
2015, Horizon moved to dismiss pursuant to Federal
Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 4.
Judge Linares dismissed the complaint without prejudice
and allowed Plaintiffs to file an amended complaint to
cure any noted deficiencies. D.E. 15. Judge Linares did not
reach the ERISA preemption issue raised by Defendant. .

*Id.* Plaintiffs subsequently amended their Complaint on December 4, 2015, alleging the following causes of action: (1) violation of N.J.A.C. 11:24-5.3 ("emergency services regulation"), (2) unjust enrichment, and (3) violation of HINT.[4] FAC ¶¶ 43-72. Defendant answered the FAC. D.E. 20. Plaintiffs now move to remand. D.E. 37.

Plaintiffs allege that this Court lacks subject matter jurisdiction to hear this case and therefore the case should be remanded to state court. Pl. Br. at 1. Since the claims alleged are premised on New Jersey regulations related to emergency medical treatment, Plaintiffs allege that they are not preempted by ERISA. *Id.* at 3. Defendant responds that Plaintiffs are essentially seeking reimbursement under the terms of an ERISA-governed health plan so that the state law claims are preempted, resulting in the Court having subject matter jurisdiction. Def. Opp'n at 1.

### III. LAW AND ANALYSIS

#### A. Standard of Review

A motion to remand is governed by 28 U.S.C. § 1447(c), which provides that removed cases shall be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Initially when a case is filed in state court, a defendant may remove any action over which the federal courts have jurisdiction. 28 U.S.C. § 1441(a). The party removing the action has the burden of establishing federal jurisdiction. *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987). This burden is heavy, since removal statutes are "strictly construed against removal and all doubts should be resolved in favor of remand." *Id.* For removal to be proper, a federal court must have original jurisdiction, that is, the removed claims must arise from a "right or immunity created by the Constitution or laws of the United States." *Concepcion v. CFG Health Sys. LLC*, No. 13-02081, 2013 WL 5952042, at *2 (D.N.J. Nov. 6, 2013); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

"In determining whether a complaint alleges a federal question, courts are generally guided by the well-pleaded complaint rule. According to the rule, a plaintiff is ordinarily entitled to remain in state court so long as its complaint does not, on its face, affirmatively allege a federal claim." *Concepcion*, 2013 WL 5952042, at *2. However, an exception to the well-pleaded complaint rule is found through complete preemption. Complete preemption applies when "Congress has so completely preempted a particular area" any complaint raising a claim in that area is "necessarily federal in character" and may be removed to federal court. *LaMonica v. Guardian Life Ins. Co. of Am.*, No. 96-6020, 1997 WL 80991, at *3 (D.N.J. Feb. 20, 1997). Put differently, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). In short, complete preemption establishes federal jurisdiction even when there are no federal claims on the face of the complaint. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 271 (3d Cir. 2001). ERISA's civil enforcement mechanism, Section 502(a), is "one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 399-400 (3d Cir. 2004) (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004)).

**\*3** On its face, Plaintiffs' FAC does not present a federal question. Rather, the FAC asserts state law claims pursuant to New Jersey regulations and common law. While the FAC does not expressly refer to ERISA, Defendant alleges that ERISA completely preempts the state law claims.

#### B. ERISA PREEMPTION

Before addressing whether Plaintiffs' state law claims are completely preempted, the Court notes that under ERISA, the term " 'preemption' is used in the law in more than one sense." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). The two forms of ERISA preemption are "complete preemption" under Section 502(a) and "ordinary preemption" under Section 514(a). *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir. 1997). The significant difference between complete preemption and ordinary (or conflict) preemption is that "[u]nlike ordinary preemption, which would only

arise as a federal defense to a state-law claim, complete preemption operates to confer original federal subject matter jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *In re U.S. Healthcare*, 193 F.3d at 160.

In other words, if ERISA completely preempts a state law cause of action, then a defendant may remove the matter to federal court on that basis alone, "even if the well-pleaded complaint rule is not satisfied." *Joyce*, 126 F.3d at 171. To this end, ERISA's complete preemption provision, Section 502, is a misnomer, since it is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009). "But if the doctrine of complete preemption does not apply, even if the defendant has a defense of 'conflict preemption' within the meaning of § 514(a) ... the district court is without subject matter jurisdiction." *Id.*; *see also Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (5th Cir. 2003) (holding that "only complete preemption of a claim under ERISA § 502(a) is required for removal jurisdiction; conflict preemption under ERISA § 514 is not required"). By comparison, "[s]tate law claims which fall outside of the scope of § 502, even if preempted by § 514(a), are still governed by the well-pleaded complaint rule and, therefore, are not removable under the complete-preemption principles." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995). In short, complete preemption pursuant to Section 502(a) is a matter of federal subject matter jurisdiction while conflict preemption under Section 514 is not.

At the outset, the Court notes that in their reply, Plaintiffs apparently confuse the two different types of preemption analyses under ERISA. Pl. R. Br. at 5-11. The cases analyzed by Plaintiffs address conflict preemption under Section 514, which does not provide a means to confer federal jurisdiction, but instead can be used as a defense in state court.

Here, the Court is addressing its subject matter jurisdiction. Thus, only Section 502(a) is relevant. Section 514 does not enter into the Court's analysis. Pursuant to Section 502(a), state law claims are completely preempted when (1) the plaintiff could have brought the action under Section 502(a) of ERISA and (2) no independent

legal duty supports the plaintiff's claims. *See Davila*, 542 U.S. at 210; *Pascack Valley Hosp.*, 388 F.3d at 400. "Because [this] test is conjunctive, a state-law cause of action is completely preempted only if both of its prongs are satisfied." *N.J. Carpenters & Tr. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). As to the first prong of the *Davila* test, a claim may be brought under Section 502(a) "to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 53 (1987); *see also Pryzbowski*, 245 F.3d at 272 ("[C]laims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme.").

*4 Additionally, when asserting a cause of action under Section 502(a), a plan's participant or beneficiary may assign his or her rights under the plan to a health care provider. *Vaimakis v. United Healthcare/Oxford*, No. 07-5184, 2008 WL 3413853, at *3 (D.N.J. Aug. 8, 2008). Doing so confers derivative standing on the health care provider. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (D.N.J. 2015). An assignment, however, does not change the preemption analysis except that a health care provider must also show that it "received *valid* assignments from individuals that receive benefits under an ERISA-governed plan." *Vaimakis*, 2008 WL 3413853, at *3. (emphasis added). Defendant has not contested Plaintiffs' assignment in its papers, so for the purposes of this analysis, the Court will assume a valid assignment.[5]

A legal duty is "independent" if it "would exist whether or not an ERISA plan existed." *Marin Gen. Hosp.*, 581 F.3d at 950. Under the second prong, a court "must examine whether interpretation or application of the terms and scope of the ERISA insurance plan form an essential part of Plaintiffs claims." *N. Jersey Brain & Spine Ctr. v. Conn. Gen. Life Ins. Co.*, No. 10-4260, 2011 WL 4737067, at *6 (D.N.J. June 30, 2011) (internal quotation marks omitted). Thus, this prong often turns on whether plaintiff's claims are "inextricably intertwined with the interpretation and application of ERISA plan coverage and benefits." *Id.* at *7.

Generally, the Third Circuit has broadly addressed two separate scenarios concerning complete preemption pursuant to Section 502(a). The first involves suits by medical providers, rather than plan participants,

against ERISA plans or plan administrators. *See, e.g., Pascack Valley*, 388 F.3d at 395. The second concerns plan participants' direct suits against the plans or their administrators. *See, e.g., Pryzbowski*, 245 F.3d at 271. The current matter involves the first scenario, which would logically lead to the conclusion that the Court should analyze this case pursuant to *Pascack Valley* and its progeny. However, *Pascack Valley* concerned a medical provider's separate agreement, apart from the ERISA plan itself, with the administrator of the plan. Here, Plaintiffs do not allege that they had a separate agreement with Defendant which entitles Plaintiffs to payment. As a result, the Court finds that the facts of *Pascack Valley* and similar cases do not easily lend themselves to a comparative analysis to the present matter. As a result, the Court will consider the analysis in *Pryzbowski* and related cases as their guidance is pertinent to the issues here.

In *Pryzbowski*, the Third Circuit addressed the issue of "how a claim that the HMO or plan administrator delayed in the approval of benefits should be treated under ERISA." 245 F.3d at 273. There, the plaintiff had an insurance policy with defendant which required her to receive prior written authorization for services performed by non-participating providers and facilities. *Id.* at 269. In conjunction with a back injury, the plaintiff requested approval from defendant to receive surgery from a non-participating surgeon. *Id.* After six months of requesting such authorization, the plaintiff received approval and underwent the surgery. *Id.* However, due to the delay, the plaintiff continued to suffer back pain after the procedure. *Id.* at 270. As a result, the plaintiff asserted claims alleging that the defendant "negligently and carelessly delayed in authorizing and/or obtaining authorization [ ] for the surgery." *Id.*

**\*5** The plaintiff filed her complaint in state court, and the defendant removed the case to federal court. The district court held that removal was proper since the plaintiff's claims were completely preempted pursuant to Section 502, and the plaintiff appealed. *Id.* at 271. In reviewing whether the plaintiff's state law claims were preempted by ERISA, the Third Circuit reviewed cases which had focused on "the distinction between claims raising quality of care issues," which *were not* preempted by ERISA and "claims raising quantity of benefits issues," which *were* completely preempted. *Id.* at 272. Yet, the *Pryzbowski* court noted that "the distinction will not always be clear." *Id.* Thus, the Third Circuit laid out an alternative to

the quality/quantity framework for determining whether a case is completely preempted under Section 502(a) of ERISA. *Id.* at 273. This framework distinguished between "eligibility decisions, which turn on the plan's coverage of a particular condition or medical procedure for its treatment" and "treatment decisions, which are choices in diagnosing and treating a patient's condition." *Id.* (internal quotation marks omitted). The court in *Pryzbowski* concluded that "the ultimate distinction to make for purposes of complete preemption is whether the claim challenges the administration of or eligibility for benefits, which falls within the scope of § 502(a) and is completely preempted, or the quality of the medical treatment performed, which may be the subject of a state action." *Id.*

*Pryzbowski* also acknowledged that there was a category of cases falling between the two poles of eligibility and treatment, and in those cases it is necessary to look to Section 502(a), keeping in mind that "Congress has clearly manifested an intent to make causes of action within the scope of the civil enforcement provisions of § 502(a) removable to federal court." *Id.* The claims at issue in *Pryzbowski* fell into the third category, with the court ultimately. determining that the claims were "limited to [defendant's] delay in approving benefits," which fit "squarely within administrative function" and were therefore completely preempted by ERISA. *Id.* at 274.

After *Pryzbowski*, the Third Circuit again recognized that certain cases did not fit neatly within the two analytical parameters set forth in *Pryzbowski. See Levine v. United Healthcare Corp.*, 402 F.3d 156, 162 (3d Cir. 2005). In *Levine*, the Third Circuit looked "beyond the framework set out in *Pryzbowski* to determine whether [the] case [fell] within section 502(a)." *Id.* In *Levine*, the plaintiffs suffered personal injuries and their medical expenses were initially paid by defendant pursuant to the plaintiffs' ERISA health plan. *Id.* at 159. After they settled their underlying tort cases, the plaintiffs reimbursed their health insurance companies for their medical expenses. *Id.* at 159-60. Several years later the New Jersey Supreme Court invalidated the New Jersey regulation that had required the plaintiffs to reimburse their insurance companies. *Id.* at 160. The plaintiffs in *Levine* then brought suit to recover the amounts that they had previously reimbursed defendants. *Id.*

The Third Circuit determined that plaintiffs' claims were essentially claims for "benefits due" and were therefore completely preempted by ERISA. *Id.* at 163. Comparing the claims to those in *Pryzbowski*, the Third Circuit found that the claims were more akin to challenges to the "administration of benefits" than challenges to the "quality of benefits received." *Id.* Noting that "[i]t is impossible to determine the merits of the [i]nsureds' claims without delving into the provisions of their ERISA-governed plans," the *Levine* court held that the claims were completely preempted by ERISA and federal subject matter jurisdiction was appropriate. *Id.*

In *Difelice v. Aetna U.S. Healthcare*, the Third Circuit once again addressed ERISA preemption in the context of a claim that did not fall directly into one of *Pryzbowski's* two discrete categories. 346 F.3d 442, 449 (3d Cir. 2003) ("[T]he decision here was in some sense both a medical treatment and an eligibility decision."). In *Difelice*, the plaintiff claimed that his insurance provider negligently interfered with his medical care by denying plaintiff access to a special tracheostomy tube and by forcing plaintiff to be discharged too soon. *Id.* at 445. The plaintiff's medical benefits were provided pursuant to an ERISA plan that was administered by the defendant. *Id.* at 444.

*\*6 Under the plan, the plaintiff was entitled to covered benefits if defendant made the determination that they were "medically necessary." *Id.* at 444. After defendant made the decision that the special tracheostomy tube was not medically necessary and therefore not covered, plaintiff's doctor used a different tube that resulted in pain, infection, and surgery. *Id.* Relying on *Pryzbowski*, the court in *Difelice* found that the defendant's decision on whether to approve the specific tube fell between the two clear cut categories of eligibility and medical treatment. As a result, the Third Circuit referred to section 502(a) to determine whether the claim could have been the subject of a civil enforcement action under ERISA. *Id.* at 449. The *Difelice* court concluded that defendant's decision could only have been an eligibility decision because there was no allegation that defendant actually provided the medical care. *Id.* at 449. The plaintiff therefore could have brought a 502(a) action to request an injunction or recover for benefits due to him under the plan. *Id.* Concluding that the plaintiff could have brought the tracheostomy claim under ERISA, the Third Circuit held that it was completely preempted. *Id.*

As to the count concerning the plaintiff's discharge, the court found that there was not enough information to demonstrate it was preempted by ERISA. *Id.* at 452-54. Unlike the first claim, the plaintiff did not allege that the hospital stay was "medically necessary," nor did the plaintiff rely on his plan's discharge policy. *Id.* at 452. Since there was nothing in the pleadings to suggest that the defendant was following the plan's terms in suggesting discharge, the *Difelice* court held that the count was not clearly "plan-related." *Id.* The Third Circuit concluded that, as a result, the count was not completely preempted and could be brought pursuant to state law negligence liability. *Id.*

With the foregoing guiding its analysis, the Court now turns to whether Plaintiffs' claims are completely preempted pursuant to Section 502(a).

Count I

Plaintiffs bring Count I under N.J.A.C. 11:24-5.3, a New Jersey regulation promulgated pursuant to the authority set forth in N.J.S.A. 26:2J-1 *et seq.* [6] Plaintiffs allege that, pursuant to the emergency services regulation, an insurance carrier must "limit a member's liability for emergency care rendered by non-participating providers." FAC ¶ 50.

The regulation begins by stating that "[t]he HMO [7] shall establish written policies and procedures governing the provision of emergency and urgent care which shall be distributed to each subscriber at the time of enrollment." N.J.A.C. 11:24-5.3. Subsection 5.3(b)(3) of the regulation indicates that "[e]mergency and urgent care services shall include, but are not limited to ... [c]overage for out-of-service area medical care when medically necessary for urgent or emergency conditions where the member cannot reasonably access in-network services." *Id.* And finally, the regulation states that, with respect to the services provided (including those in (b)(3)), "carriers shall reimburse hospitals and physicians for all medically necessary emergency and urgent health care services *covered under the health benefits plan*, including all tests necessary to determine the nature of an illness or injury, in accordance with the provider agreement when applicable." *Id.* 5.3(c) (emphasis added).

*\*7 Here, prong one of the *Davila* test is met. At the outset, no argument is made concerning the treatment

decisions or the quality of treatment (to the contrary, Plaintiffs claim that they provided appropriate treatment), so the clear non-ERISA category set forth in *Pryzbowski* is not relevant. Instead, Plaintiffs argue that the regulation explicitly provides that they are entitled to their normal and customary fees. Plaintiffs' argument, however, misses a key condition precedent to this payment. The emergency health services for which reimbursement is sought must first be "covered under the health benefits plan [.]" N.J.A.C. 11:24-5.3(c). Thus, the threshold question is what benefits were covered under Patient AM's health plan? As a result, it is impossible to determine the merits of Plaintiffs' claim without first reviewing the provisions of Patient AM's ERISA-governed plan. Like *Levine* and *Defelice*, this requirement puts Plaintiffs' claim squarely within Section 502(a)'s complete preemption reach.

Prong two of the *Davila* test is similarly met since the emergency services regulation does not create an independent legal duty. Again, the regulation requires the benefits covered to be determined by a review of Patient AM's plan. The regulation requires an HMO (see, *supra*, notes 8 & 9) to "establish written policies and procedures governing the provision of emergency and urgent care" and goes on to provide what that care includes, but the plan itself is the source for determining which services are "covered." Thus, the regulation does not create an independent legal duty and Count 1 is preempted by ERISA.

Count II

In Count II Plaintiffs bring a claim against Defendant for unjust enrichment. Plaintiffs allege that "[f]ailure of Defendant to [ ] pay for the Services rendered to Patient AM by Dr. Cohen and POA would be unjust." *Id.* ¶ 58. [8] To demonstrate unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust and that the plaintiff expected remuneration and the failure to give remuneration unjustly enriched the defendant." *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 440 N.J. Super. 325, 350 (App. Div. 2015) (internal quotation marks omitted). Again, Plaintiffs do not base their unjust enrichment claim on an independent agreement with Defendants; instead Plaintiffs rely on Patient AM's plan and Plaintiffs' status as an alleged assignee and designated representative of AM.

Plaintiffs point to no case in which an out-of-network physician or medical practice has been able to proceed with an unjust enrichment claim against a plan administrator solely because medical services have been provided to a plan participant. Indeed, Plaintiffs have not addressed their unjust enrichment claim in any detail. *See* note 11, *supra*. As a result, the Court assumes that the basis for Plaintiffs' claim is its alleged assignment from Patient AM. While the assignment can confer derivative standing for ERISA claim purposes, the assignment works to put Plaintiffs in the shoes of AM. AM, in turn, could bring a claim pursuant to Section 502(a), which by definition meets the first prong of *Davila*. Also, such a claim would be dependent upon, rather than independent of, AM's plan. So, the second prong is also met. Plaintiffs' unjust enrichment count is therefore subject to complete preemption.

Count III

*8 In Count III, Plaintiffs apparently allege a violation of N.J.A.C. 11:22-1.5.[9] Plaintiffs allege that the regulation "requires that a health insurer, such as the Defendant, shall remit payment for every insured claim no later than the 30[th] calendar day following receipt of the claim." *Id.* ¶ 64. N.J.A.C. 11:22-1.5, titled "Prompt payment of claims," provides that:

(a) A carrier and its agent shall remit payment of clean claims pursuant to the following time frames:

1. Thirty calendar days after receipt of the claim where the claim is submitted by electronic means or the time established for the Federal Medicare program by 42 U.S.C. § 1395u(c)2(B), whichever is earlier; or

2. Forty calendar days after receipt of the claim where the claim is submitted by other than electronic means.

(b) Carriers and their agents shall pay claims that are disputed or denied because of missing information or documentation within 30 or 40 calendar days of receipt of the missing information or documentation, as applicable, pursuant to (a) above.

N.J. Admin. Code § 11:22-1.5(a) & (b).

The regulation only applies to "clean claims."[10] A "clean claim" is, in turn, defined in N.J.A.C. 11:22-1.2. Among

other things, the term means that "the claim is for a service or supply *covered by the health benefits plan* [.]" *Id.* (emphasis added). As a result, and for similar reasons discussed concerning Count I, Count III is completely preempted. First, Count III could be brought pursuant to Section 502(a) because it is a claim to recover benefits or enforce rights under AM's plan. To do so, Count III requires the Court to delve into AM's plan to determine what is covered. Second, Count III is not based upon an independent legal duty. To the contrary, the regulations make clear that basis for recovery is determined by the plan itself and what is covered.

**\*9** In sum, each of Plaintiffs' three asserted claims are completely preempted by Section 502 of ERISA, and the Court has subject matter jurisdiction. Therefore, Plaintiffs' motion to remand is denied.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion to remand is **DENIED.** An appropriate Order accompanies this Opinion.

**All Citations**

Slip Copy, 2017 WL 685101

Footnotes

1    Plaintiffs' brief in support of its motion to remand will be referred to hereinafter as "Pl. Br." (D.E. 37), Defendant's opposition to Plaintiffs' brief will be referred to hereinafter as "Def. Opp'n" (D.E. 44), and Plaintiffs' reply brief in support of its motion to remand will be referred to hereinafter as "Pl. R. Br." (D.E. 45).

2    The facts of this matter derive from Plaintiffs' First Amended Complaint ("FAC"). D.E. 17. In ruling on a motion to remand, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987).

3    According to the parties' briefs, since the filing of the complaint, Defendant has paid Plaintiffs a few thousand dollars. Pl. Br. at 6; Def. Opp'n at 3.

4    The amended complaint provides no statutory cite for HINT. HINT can be found at N.J.S.A. 17B:26-9.1. In their moving brief, Plaintiffs cite N.J.A.C. 11:22-1.5 as the applicable regulation for Count III. The cited regulation, N.J.A.C. 11:22-1.5, implements N.J.S.A. 17B:30-26 through 34. N.J.A.C. 11:22-1.1. In other words, the cited regulation does not apply to HINT.

5    The Court is not ruling that the assignment at issue was in fact valid or that it was not subject to anti-assignment provision. Instead, solely for purposes of this Opinion, the Court assumes the validity of the assignment.

6    N.J.S.A. 26:2J-1 *et seq.* applies to Health Maintenance Organizations, or HMOs. Defendant has not argued that the regulation, in light of the underlying statute, does not apply to Defendant. Likewise, Plaintiff has not proven that the regulation permits a private cause of action, and Defendant has not contested whether a private right of action exists. As a result, solely for purposes of this Opinion, the Court will assume that the regulation applies to Defendant and Plaintiffs have a private right of action. However, the Court is not finding that Defendant is necessarily governed by the regulation nor is the Court finding that Plaintiffs have a private cause of action pursuant to the regulation.

7    HMO stands for Health Maintenance Organization. "HMO," and other specific words and phrases such as "carrier," are subject to specific definitions set forth in N.J.A.C. 11:24-1.2. Neither party has addressed whether the particular definitions impact the Court's analysis. For example, Plaintiff has alleged that Defendant is a "plan administrator." Nowhere has Plaintiff alleged that Defendant is either an HMO or a carrier as defined under the regulation.

8    Although Plaintiffs are asking for a complete remand, they inexplicably fail to address Count II—whether ERISA preempts their claim for unjust enrichment. If the Court found that ERISA preempts Count II (as it does), then it would not need to address preemption with respect to Counts I and III since it could exercise supplemental jurisdiction over those claims. *See Pryzbowski*, 245 F.3d at 275-76 (finding that when ERISA preempted certain state law claims, the district court properly exercised supplemental jurisdiction over the remaining state law claims because they "[were] derived from the same factual predicate" and therefore should "be combined in one judicial proceeding").

9    As discussed in note 6, Count III lists HINT (without citation) but then make allegations consistent with N.J.A.C. 11:22-1.5 and Plaintiffs claim in their brief that N.J.A.C. 11:22-1.5 is the pertinent regulation. As a result, the Court is substantively analyzing the count pursuant to the regulation.

10   Defendant disputes that N.J.A.C. 11:22-1.5 applies to the present claim since the regulation only applies to "clean claims" and "does not apply to claims that are denied or disputed." Def. Opp'n at 7 n.5. Since this claim is disputed, Defendant

Cohen v. Horizon Blue Cross Blue Shield of New Jersey, Slip Copy (2017)

contends that the regulation is not applicable. *Id.* Additionally, Defendant argues that pursuant to *Briglia v. Horizon Healthcare Services, Inc.*, No. 03-6033, 2005 WL 1140687, at *1 (D.N.J. May 13, 2005), no private cause of action exists to pursue a violation of the PPA. Def. Opp'n at 7 n.5. Defendant is incorrect in its analysis of *Briglia*. In *Briglia*, the court found that N.J.A.C. 11:22-1.5 was inapplicable to the facts there and thus did not reach the issue of whether the statute contained a private cause of action. *Id.* at *11. Here, since there is no pending motion to dismiss, the Court does not reach the issues raised by Defendant—whether Plaintiffs have adequately pled a clean claim or whether Plaintiffs have a cause of action pursuant to the regulation. The Court is analyzing the regulation solely in terms of ERISA complete preemption. However, nothing in this Opinion prohibits Defendant from raising its arguments in an appropriate motion if it so chooses.

---

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT B

Wayne Surgical Center, LLC v. Concentra Preferred..., Not Reported in...

KeyCite Yellow Flag - Negative Treatment
Distinguished by MHA, LLC v. Aetna Health, Inc., D.N.J., February
25, 2013

2007 WL 2416428
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

WAYNE SURGICAL CENTER, LLC, individually and
on behalf of all those similarly situated, Plaintiffs,

v.

CONCENTRA PREFERRED
SYSTEMS, INC., Defendant.

Civil Action No. 06–928.
|
Aug. 20, 2007.

**Attorneys and Law Firms**

Bruce H. Nagel, Esq., Robert Solomon, Esq., Nagel, Rice
& Mazie, Roseland, NJ, Thomas A. Gentile, Esq., Neil L.
Prupis, Esq., Lampf, Lipkind, Prupis & Petigrow, West
Orange, NJ, for Plaintiffs.

Dawn J. Groman, Esq., Michael Kendall, Esq., Daniel A.
Curto, Esq., Lauren M. Papenhausen, Esq., McDermott
Will & Emery LLP, New York, NY, for Defendant.

*OPINION AND ORDER*

ACKERMAN, Senior District Judge.

**\*1** This matter comes before the Court on Defendant's
motion to dismiss (Docket No. 8) for failure to state a
claim or, in the alternative, to dismiss Plaintiff's state
law claims because they are preempted by the Employee
Retirement Income and Security Act ("ERISA"), 29
U.S.C. § 1132(a)(1)(B), *et seq.* For the following reasons,
Defendant's motion to dismiss is GRANTED.

*Background*

Plaintiff Wayne Surgical Center ("WSC") provides
ambulatory surgical care to patients who undergo same-
day surgical procedures and also provides out-of-network
services to subscribers in a number of health insurance

plans on a non-contractual basis. Under the terms of
the health care plans, these health insurance carriers
are obligated to reimburse WSC for services rendered
to the insured patients based on usual, customary,
and reasonable charges. Defendant Concentra Preferred
Systems, Inc. ("CPS") provides health care management
services, including the re-pricing of claims submitted to
health insurance carriers by medical services providers.
After a medical service provider submits its bill to a health
insurance carrier, the carrier submits the bill to CPS for
a determination of the usual, customary, and reasonable
charges of the services rendered by the medical service
provider. The health insurance carrier then pays the
medical service provider according to CPS's evaluation.

WSC alleges that CPS's re-pricing practice has
systematically reduced payments to medical service
providers, such as itself, using flawed and inaccurate
computer software and data. WSC argues that CPS
wrongfully withheld and/or reduced payment for valid
insurance claims while retaining fees and a percentage
of the reimbursement. Accordingly, on January 26, 2006,
WSC filed a Complaint in the Superior Court of New
Jersey, Essex County Court. The Complaint sets forth the
following counts: unjust enrichment (Count II), tortious
interference with contractual rights and prospective
economic advantages (Count III), and violation of the
New Jersey Consumer Fraud Act (Count IV). [1] WSC also
sought class certification on behalf of similarly situated
provider members. On February 28, 2006, CPS removed
the instant action to this Court, and on May 9, 2006, CPS
filed a motion to dismiss.

*Analysis*

**A. Federal Question Removal**

A civil action filed in a state court may be removed to
federal court if the claim is one "arising under" federal
law. 28 U.S.C. §§ 1331, 1441(a). Under the "well-pleaded
complaint" rule, the plaintiff is ordinarily entitled to
remain in state court so long as its complaint does
not, on its face, affirmatively allege a federal claim.
*Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 6 (2003).
To support removal, "[a] right or immunity created by
the Constitution or laws of the United States must be
an element, and an essential one, of the plaintiff's cause
of action." *Franchise Tax Bd. of Cal. v. Constr. Laborers
Vacation Trust for S. Cal.,* 463 U.S. 1, 10–11 (1983) (citing

Case 3:17-cv-13109-FLW-LHG   Document 11-2   Filed 01/04/18   Page 14 of 30 PageID: 372

Wayne Surgical Center, LLC v. Concentra Preferred..., Not Reported in...

*Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936)). Federal preemption is ordinarily a defense to a plaintiff's suit and, as such, does not appear on the face of a well-pleaded complaint. *Anderson*, 539 U .S. at 6; *Franchise Tax Bd.*, 463 U.S. at 12.

**\*2** A party seeking to remove bears the burden of proving that it has met the requirements for removal. *Group Hospitalization & Med. Servs. v. Merck–Medco Managed Care, LLP*, 295 F.Supp.2d 457, 461–62 (D.N.J.2003). Removal statutes are strictly construed against removal, and all doubts should be resolved in favor of remand. *Entrekin v. Fisher Scientific Inc.*, 146 F.Supp.2d 594, 604 (D .N.J.2001).

The Complaint in this matter asserts causes of action against CPS for unjust enrichment, tortious interference with contractual rights and prospective economic advantages, and violation of the New Jersey Consumer Fraud Act. However, the Complaint does not, on its face, present a federal question. CPS asserts that a federal question arises in the context of ERISA and therefore removal of the instant matter to this Court is proper. Specifically, CPS contends that WSC's claims against CPS are "completely preempted" under ERISA's civil enforcement mechanism, § 502(a)(1)(B). On the other hand, WSC asserts that removal of its Complaint is improper because the causes of action WSC asserts against CPS do not fall within the narrow scope of ERISA's civil enforcement provision.

ERISA governs the employee welfare benefit plans under which CPS re-prices claims. *See* 29 U.S.C. § 1002(1). However, before the Court can make a determination on CPS's motion to dismiss, the Court must first determine whether it has subject matter jurisdiction over this case. The Court has subject matter jurisdiction over this case if the requirements for complete preemption under ERISA are satisfied.

**B. Complete Preemption Under ERISA**
The Supreme Court provided guidance on the scope of complete preemption under ERISA § 502(a)(1)(B) in *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* at 208. Therefore, "ERISA includes expansive preemption provisions ... which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.' " *Id.*

(quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). As part of ERISA's "comprehensive legislative scheme," § 502(a) serves as an "integrated enforcement mechanism" for ERISA remedies. *Id.* Section 502(a) allows "a participant or beneficiary" to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. "Thus, the ERISA civil enforcement mechanism is [a] provision with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.' " *Id.* (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65–66 (1987)). Accordingly, "causes of actions that fall within the scope of the civil enforcement provisions of § 502(a) [are] removable to federal court." *Id.* (quoting *Metropolitan Life*, 481 U.S. at 66). "[I]f an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where no other independent legal duty is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Id.* at 210.

**\*3** Based on *Davila*, the Third Circuit in *Pascack Valley Hosp., Inc., v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir.2004) established a two-prong test for determining whether state law claims brought by plaintiffs, such as WSC, are completely preempted by ERISA. Under the *Pascack Valley* test, a state claim may be removed to federal court "only if (1) the Hospital could have brought its breach of contract claim under § 502(a), and (2) no other legal duty supports the Hospital's claim." *Id.*

In *Pascack Valley*, the Third Circuit left open the question of whether a "[h]ospital can obtain standing under § 502(a) by virtue of an assignment of a claim from a participant or beneficiary ." 388 F.3d at 400. Because the defendant in *Pascack Valley* failed to demonstrate that the hospital obtained an assignment, the Third Circuit did not have to reach a decision on the standing-by-assignment claims as the issue was not squarely before the Court. *Id.* at 402, 401 n. 7. Since *Pascack Valley*, courts in this District have

Case 3:17-cv-13109-FLW-LHG   Document 11-2   Filed 01/04/18   Page 15 of 30 PageID: 373

Wayne Surgical Center, LLC v. Concentra Preferred..., Not Reported in...

avoided addressing the standing-by-assignment issue by finding that no valid assignment existed or that a contract independent of ERISA between the provider and plan supported the hospital's claim. *See Newark Beth Israel v. N. N.J. Teamsters Benefit Plan*, Nos. 03–2922, 05–5309, 05–5737, 05–5742, 2006 WL 2830973, at *6 (D.N.J. Nov. 20, 2006) ("The Hospital's right to recovery ... depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself."); *see also Englewood Hosp. & Med. Ctr. v. Aftra Health Fund*, No. 06–6037, 2006 WL 3675261 (D.N.J. Dec. 12, 2006) (Ackerman, J.) ("[T]his Court need not decide whether the Hospital could have brought its breach of contract claim under § 502(a) because the Hospital's claims are predicated on a separate legal duty independent of ERISA."); *Barnert Hosp. v. Horizon Healthcare Servs., Inc.*, No. 06–3266, 2007 WL 1101443 (D.N.J. Apr. 11, 2007) (Ackerman, J.) (same).

Resolution of this matter, however, requires the Court to address the standing-by-assignment issue because WSC is an out-of-network hospital that: 1) "does not have any health insurance payor setting forth the terms under which the payor will make payment for services that [WSC] provides to patients whom that payor insures;" and 2) "[a]s part of its routine dealings with each patient, [WSC] receives from each patient an assignment of benefits, through which the patient assigns to [WSC] (among other rights) the patient's right to receive payment directly from the patient's insurer for the services that the patient receives at [WSC]." (Pl. Opp'n Br. at 2–3 .) Accordingly, the Court must consider whether WSC has derivative standing to sue under ERISA.

Since *Pascack Valley*, district courts in this Circuit have recognized the validity of assignments of benefits from patients to a hospital. *See Newark Beth Israel*, 2006 WL 2830973, at *5. ("[T]he Hospital has met its burden of establishing the existence of a valid assignment."); *see also Englewood Hosp.*, 2006 WL 3675261, at *3. Here, neither of the parties dispute the existence of valid assignments between WSC and its patients, and that WSC is entitled to receive direct reimbursements from patients' insurers. Rather, the dispute pertains to the decreased reimbursement amounts WSC has received, allegedly due to CPS's pricing scheme.

**\*4** This Court concludes that WSC has standing as an assignee to bring a claim against CPS under

Section 502(a) of ERISA. The Court finds persuasive the arguments articulated by the Fifth Circuit in support of allowing standing-by-assignment under ERISA in *Tango Transport v. Healthcare Financial Services*, 322 F.3d 888 (5th Cir.2003). Although Congress included an anti-assignment provision pertaining to *pension* plans under ERISA, Congress has not included an anti-assignment provision for health care benefits. *Id.* at 891. According to the Supreme Court, the silence of Congress on a matter such as this must mean that health care benefits are assignable. *See Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837–38 (1988). ("Once Congress was sufficiently aware of the prospect that ERISA plan benefits could be attached and/ or garnished—as evidenced by its adoption of § 206(d) (1)—'Congress' decision to remain silent concerning the attachment or garnishment of ERISA welfare plan benefits 'acknowledged and accepted the practice, rather than prohibiting it.' ") (quoting *Alessi*, 451 U.S. at 516)). Moreover, numerous circuit courts to have considered the standing-by-assignment issue have "held that a health care provider can assert a claim under § 502(a) where a beneficiary or participant has assigned to the provider that individual's right to benefits under the plan." [2] *Pascack Valley Hosp.*, 388 F.3d at 401 n. 7 (referring to cases collected in *Tango Transp.*, 322 F.3d at 891); *see also Morlan v. Universal Guar. Life Ins. Co.*, 298 F.3d 609, 614–15 (7th Cir.2002); *Sys. Council EM–3 v. AT & T Corp.*, 159 F.3d 1376, 1383 (D.C.Cir.1998); *City of Hope Nat'l Med. Ctr. v. HealthPlus, Inc.*, 156 F.3d 223, 226 (1st Cir.1998); *St. Francis Reg'l Med. Ctr. v. Blue Cross and Blue Shield of Kan.*, 49 F.3d 1460, 1464–65 (10th Cir.1995).

The Fifth Circuit has articulated additional policy reasons in support of finding that healthcare providers have standing to sue under ERISA as valid assignees. In *Tango Transport*, the court held that it was "nonsensical for an original health care provider assignee to receive both welfare benefits and the right to enforce them via derivative standing, but a subsequent assignee can receive only the benefits, but not the right to enforce them." *Tango Transport*, 322 F.3d at 893. Here, this Court similarly finds that it is illogical to recognize that WSC as a valid assignee has a right to receive the benefit of direct reimbursement from its patients' insurers but cannot enforce this right. This Court also agrees with the Fifth Circuit that "granting derivative standing to the assignees of health care providers helps plan participants

Case 3:17-cv-13109-FLW-LHG   Document 11-2   Filed 01/04/18   Page 16 of 30 PageID: 374

Wayne Surgical Center, LLC v. Concentra Preferred..., Not Reported in...

and beneficiaries by encouraging providers to accept participants who are unable to pay up front." *Id.* at 894.

Moreover, the Court finds no convincing argument to support the suggestion that WSC should not have standing to bring suit under ERISA as a valid assignee. The only case in which the Third Circuit expressed doubts with regard to the standing-by-assignment issue was decided in 1985, three years prior to the Supreme Court's ruling in *Mackey. See Northeast Dep't ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147, 154 n. 6 (3d Cir.1985) ("[E]ven if [the plaintiff] had actually assigned her claim to the IGLWU Fund, we have serious doubts whether she could assign along with her substantive rights her right to sue in federal court."). In *Pascack Valley,* the Third Circuit noted that "[d]istrict courts in this Circuit have disagreed over the scope of *ILGWU,*" but ultimately declined to express an opinion on derivative standing under Section 502(a) of ERISA because the issue was not squarely before it. 388 F.3d at 401 n. 7.

*\*5* However, courts in this Circuit have found that the proposition set forth in *ILGWU* is not binding authority. *See Winter Garden Med. Ctr. v. Montrose Foods Prods. of Pa., Inc.,* No. 91–2327, 1991 WL 124577, at *3 n. 2. (E.D.Pa. July 3, 1991) ("As the court casually mentioned this proposition in a footnote without any discussion, it is mere dicta which does not require this court to adopt a different result."); *see also Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co.,* No. 92–1520, 1992 WL 236257 at *5 (E.D.Pa. Sept. 3, 1992); *Albert Einstein Med. Ctr. v. Nat'l Benefit Fund,* 740 F.Supp. 343, 350 (E.D.Pa.1989). Moreover, at least one court in a post-*Pascack Valley* decision concluded that patients may assign their benefits to health care providers. *See In re LymeCare, Inc.,* 301 B.R. 662, 682 (Bankr.D .N.J.2003) (agreeing with other circuits that medical care providers that receive an assignment of benefits from its patients have standing to sue under ERISA). For the foregoing reasons, the Court finds that WSC has standing to sue under § 502(a) of ERISA as a valid assignee, thereby satisfying the first prong of the *Pascack Valley* test.

The Court also finds that the second prong of the *Pascack Valley* test is satisfied here. WSC's state claims against CPS do not arise from the terms of an independent contract but rather from a dispute over the amount of reimbursement to which WSC is entitled as an assignee of

its patients' welfare benefit plan benefits as governed by ERISA. As noted above, WSC provides out-of-network services to CPS subscribers on a non-contractual basis. In *Pryzbowksi v. U.S. Healthcare, Inc.,* 245 F.3d 266, 273 (3d Cir.2001), the Third Circuit held that "cases challenging the quality of the medical treatment performed" are not completely preempted under section 502(a) of ERISA but "cases where the claim challenges the administration of, or eligibility for, benefits" are completely preempted. Subsequently, in *Levine v. United Healthcare Corp.,* 402 F.3d 156 (3d Cir.2005), the Third Circuit held that reimbursement claims of previously-paid health benefits qualify as claims for "benefits due" and are therefore completely preempted under ERISA.

Applying these Third Circuit decisions to the case at bar, this Court concludes that WSC's claims against CPS of unjust enrichment, tortious interference, and violation of the New Jersey Consumer Fraud Act essentially serve to retrieve "benefits due" and pertain to challenges to the "administration" of benefits rather than "the quality of the medical treatment performed." *Pryzbowski,* 245 F.3d at 273. Because no extrinsic contract governs the amount of reimbursement to which WSC is entitled, WSC's claims are "inextricably intertwined" with the terms of the ERISA welfare benefit plans. *Compare Ala. Dental Assoc. v. Blue Cross & Blue Shield of Ala., Inc.,* No. 205–1230, 2007 WL 25488, at *5 (M.D.Ala. Jan. 3, 2007) (holding claims by out-of-network dentists who received assignment of benefits from their patients were completely preempted by ERISA because the dentists' allegations against the defendant were not based on any duty independent of their patients' Benefit Agreements), *with Barnert Hosp.,* 2007 WL 1101443, at *11 ("The Plaintiffs, in this matter, are neither 'participants' or 'beneficiaries' as defined under ERISA and their claims are predicated on a separate legal duty independent of ERISA. Nor are the Plaintiffs claims for breach of contract, unjust enrichment and quantum meruit 'inextricably intertwined' with the terms of the ERISA plan."). Accordingly, the Court finds that WSC's claims are not predicated on a legal duty independent of ERISA, and the second prong of the *Pascack Valley* test is therefore satisfied.

*\*6* WSC contends that the Third Circuit has not held that "only a separate contract can satisfy the second prong's definition of an 'independent legal duty' under the *Pascack Valley* test." (Pl. Suppl. Opp'n Br. at 6). WSC also asserts that "its state law causes of action are

Case 3:17-cv-13109-FLW-LHG    Document 11-2    Filed 01/04/18    Page 17 of 30 PageID: 375

Wayne Surgical Center, LLC v. Concentra Preferred..., Not Reported in...

premised on legal duties that [CPS], as an outsider to the relationship between [WSC] and the insurers, owes to [WSC] wholly independent of ERISA. *(Id.* at 4.) In support of this proposition, WSC specifically points to tortious interference as a cause of action premised on legal duties independent of ERISA. Even if *Pascack Valley* can be read in this way, the Court nevertheless finds that WSC's claims of unjust enrichment, tortious interference, and violation of New Jersey Fraud Act cannot be resolved without reference to the benefit plans governed by ERISA.

Various district courts faced with ERISA complete preemption cases, both within and outside of this Circuit, have reached similar results. *See Ambulatory Infusion Therapy Specialists, Inc. v. Aetna Life Ins. Co.,* No. 05–4389, 2006 WL 1663752, at *8 (S.D. Tex. June 13, 2006) (distinguishing *Pascack Valley* and concluding that "AITS is challenging Aetna's determination that certain charges were in excess of *'reasonable and customary' fees charged,* or were duplicative of charges that had already been paid. Resolving this dispute requires a determination of N.D.'s rights and *benefits due* under the Kroger ERISA Plan") (emphasis added); *see also Smith v. Logan,* 363 F.Supp.2d 804, 812 (E.D.Va.2004) (holding that former employee's tortious interference claim brought in state court could not be resolved without reference to ERISA-regulated plan, and, thus, claim was completely preempted by ERISA); *Termini v. Life Ins. Co. of N. Am.,* 464 F.Supp.2d 508, 516 (E.D.Va.2006) (applying the tortious interference analysis in *Smith,* and holding that "plaintiff's claims [were] not governed by a legal duty independent of the ERISA plan"); *Thomas v. Aetna Inc.,* No. 98–2552, 1999 WL 1425366, at *9 (D.N.J. June 8, 1999) ("Because the terms of the Plan are critical to the resolution of the fraudulent inducement claim, the plaintiff's cause of action is sufficiently 'related to' an ERISA plan to fall within the purview of ERISA's preemption clause.").

For the foregoing reasons, the Court finds that this matter does not involve any legal duties independent of the ERISA-governed plans to which WSC received an assignment of benefits. The second prong of the *Pascack Valley* test is satisfied here, and WSC's state claims are therefore completely preempted by ERISA. Accordingly, the Court has subject matter jurisdiction over this case, and CPS's motion to dismiss is properly before the Court.[3]

**C. Express Preemption Under ERISA**

Although CPS does not allege that WSC's state law claims are expressly preempted by Section 514(a) of ERISA, the Court finds it appropriate to consider this issue separately. Express preemption under Section 514(a) of ERISA— as opposed to complete preemption under § 502(a)— provides that "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may not or here after *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). In *Pilot Life Insurance Company v. Dedeaux,* the Supreme Court gave § 514(a) a broad reading, stating: "[T]he phrase 'relate to' [is] given its broad commonsense meaning, such that a state law 'relate[s] to' a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Mass.,* 471 U.S. 724, 739 (1985)) (internal quotation marks omitted).

**\*7** Recently, the Third Circuit upheld a district court's finding of express preemption under Section 514(a) for a professional malpractice claim against a non-fiduciary plan administrator. *Kollman v. Hewitt Assocs.,* Nos. 05–5018, 05–5207, 06–1558, 2007 WL 1394503 (3d Cir. May 14, 2007). The plaintiff in *Kollman* sued the defendant, a third-party service provider, for providing an inaccurate benefits calculation, including the amount of the plaintiff's lump sum pension. *Id.* at * 1–2. The Third Circuit agreed with the district court that the plaintiff's claims were preempted by ERISA because the plaintiff's claim went "to the essence of the function of an ERISA plan —the calculation and payment of the benefit due to a plan participant." *Id.* at * 10. As the Third Circuit explained, "[a]llowing beneficiaries to assert state law claims against non-fiduciary plan administrators ... would upset the uniform regulation of plan benefits intended by Congress." *Id.* (quoting *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1565 (11th Cir.1987)).

Applying the principles set forth in *Pilot* and *Kollman,* the Court finds that WSC's claims against CPS are expressly preempted by Section 514(a) of ERISA. WSC's causes of action "relate to" an ERISA-governed benefit plan because they all stem from an alleged underpayment of benefits. Like the plaintiff in *Kollman,* WSC essentially disputes "the calculation and payment of [a] benefit due" to WSC based on the assignment of benefits WSC received from its patients. *Id.* at *10. Therefore, any adjudication

of WSC's state law claims of unjust enrichment, tortious interference, and violation of New Jersey Consumer Fraud Act requires the Court to consider in detail the plans to which WSC received an assignment of benefits "in order to properly address [WSC's] arguments outside the mechanism prescribed by ERISA." *Id.* Such an outcome contravenes congressional intent with respect to "developing a nationwide scheme for ERISA plans." *Id.* Accordingly, express preemption under Section 514(a) of ERISA also applies in this matter.

The finding of preemption under Section 514(a), however, does not serve as an independent basis for subject matter jurisdiction. *See Dukes v. U.S. Healthcare,* 57 F.3d 350, 355 (3d Cir.1995) ("When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved."). Thus, this court's finding of express preemption under Section 514(a) is not dispositive.

Nevertheless, the Court's conclusion that WSC's claims are expressly preempted by Section 514(a) buttresses the Court's finding of complete preemption under Section 502(a). As stated above, the Court finds that WSC's claims are expressly preempted by § 514(a) because they "relate to" an ERISA-governed benefit plan. The Court also finds that WSC's claims are completely preempted by § 502(a) because they essentially serve to retrieve "benefits due" under the ERISA plans to which WSC received an assignment of benefits. In short, resolution of this matter requires an evaluation of benefit plans governed by ERISA. Therefore, WSC's claims are both completely and expressly preempted by ERISA.

### D. ERISA's Savings Clause
**\*8** WSC contends that ERISA's savings clause allow it to pursue its state law claims. The savings clause, section 514(b)(2)(A), provides: "nothing in [ERISA's preemption provisions] shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).[4] WSC alleges CPS violated N.J.A.C. § 11:21–7.13, "a New Jersey state regulation of the conduct of the insurance industry." (Pl. Opp'n Br. at 20). This

administrative regulation was established pursuant to N.J.S.A. § 17B:27A–17 *et seq.,* the Small Employer Health Benefits Program. The relevant portion of N.J .A.C. provides the following:

(a) In paying benefits for covered services under the terms of the small employer health benefits plans provided by health care providers not subject to capitated or negotiated fee arrangements, *small employer carriers* shall pay covered charges for medical services, on a reasonable and customary basis or actual charges, and, for hospital services, based on actual charges. Reasonable and customary means a standard based on the Prevailing Healthcare Charges System profile for New Jersey or other state when services or supplies are provided in such state, incorporated herein by reference published and available from the Ingenix, Inc. 12125 Technology Drive, Eden Prairie, Minnesota 55344.

N.J.A.C. § 11:21–7.13 (emphasis added). Although WSC asserts that CPS violated N.J.A.C. § 11:21–7:7.13, WSC does not affirmatively state that CPS qualifies as a "small employer carrier" as required by the regulation. Moreover, WSC actually describes CPS as *"a national provider* of medical cost containment and healthcare management services, including (among other services) bill repricing services." (Pl. Opp'n Br. at 4 (emphasis added).) Based on WSC's characterization of CPS as "a national provider," the Court concludes that WSC itself acknowledges that CPS does not qualify as a "small employer carrier." CPS cannot, therefore, be said to have violated N.J.A.C. § 11:21–7:7.13 because the statute apparently does not apply to CPS. Accordingly, the Court finds that WSC's state claims against CPS cannot be saved under Section 514(b)(2)(A).[5]

### D. Motion to Dismiss Standard
Because this Court holds that it has subject matter jurisdiction, it now considers CPS's motion to dismiss. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Under Rule 12(b)(6), the Court is required to accept as true the facts and allegations contained in the complaint and all reasonable inferences drawn therefrom, and to view the facts in the light most favorable to the non-moving party. *Sadruddin v. City of Newark,* 34 F.Supp.2d 923, 925 (D.N.J.1999); *see also Gen. Motors Corp. v. New A Chevrolet, Inc.,* 263 F.3d 296, 325 (3d Cir.2001).

While the Court will accept as true all reasonable inferences and well-pleaded allegations, it will not accept "unsupported conclusions and unwarranted inferences" or legal conclusions cast in the form of factual allegations. *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir.2002). In the complaint, the claimant must set forth sufficient information to provide defendant with notice of the plaintiff's claims, such as the elements of the claims. *Id; see also* Fed.R.Civ.P. 8(a)(2). A "complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiff['s] cause of action." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). The Supreme Court has explained:

> *9 The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson*, 355 U.S. 41, 47–48 (1957). "The court may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

CPS asserts that the instant action should be dismissed because WSC did not state a valid state law claim, and, even if WSC had done so, its claims are completely preempted by ERISA's civil enforcement provision. As demonstrated herein, the Court finds that WSC's state law claims in its Complaint are completely preempted by ERISA § 502(a) and expressly preempted by § 514 as claims "relating to" an employee benefits program.

District courts have held that when a plaintiff's claims are completely preempted by ERISA as here, granting dismissal with leave to file an amended Complaint asserting an ERISA claim is an appropriate course of action. *See Viechnicki v. Unumprovident Corp.*, No. 06–

2460, 2007 WL 433479, at *6 (E.D.Pa. Feb. 8, 2007); *Cecchanecchio v. Cont'l Casualty Co.*, No. 00–4925, 2001 WL 43783, at *5 (E.D.Pa. Jan. 19, 2001); *Delong v. Teacher's Ins. and Annuity Ass'n*, No. 99–1384, 2000 WL 426193, at*5 (E.D.Pa. Mar. 29, 2000). "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Gregory Surgical Servs., LLC. v. Horizon Blue Cross Blue Shield of N.J., Inc.*, No. 06–0462, 2006 WL 3751385, at *2 (D.N.J. Dec. 19, 2006) (quoting *Grayson v. Mayview State Hosp.*, 283 F.3d 103, 108 (3d Cir.2002)).

Because the state law claims in WSC's Complaint are preempted by ERISA, the Court will grant CPS's motion to dismiss. The Court will grant WSC leave to file an amended Complaint to assert an ERISA claim or claims if feasible.

### Conclusion and Order

For the foregoing reasons, it is hereby ORDERED that Defendant's motion to dismiss (Docket No. 8) is GRANTED. Plaintiff's Complaint is DISMISSED as being preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

Should Plaintiff desire to file an amended complaint alleging that Defendant has violated ERISA, said amended complaint must be filed within forty five (45) days of the issuance of this Order. If Plaintiff fails to file a timely amended complaint, the Court will direct the Clerk of Court to close this case without further notice.

### All Citations

Not Reported in F.Supp.2d, 2007 WL 2416428

---

Footnotes

1    Counts I and V of the Complaint do not state a specific claim and relate to different factual allegations.

2    Indeed, the Court is not aware of any court of appeals decision holding that health care benefits are not assignable.

3    The Court notes that there is a question as to whether CPS qualifies as a proper defendant under ERISA. As a court in this District noted in *Briglia v. Horizon Healthcare Services*, No. 03–6033, 2005 WL 1140687, at *5 (D.N.J. May 13, 2005), "the Third Circuit has not determined whether a plaintiff may bring suit against a third party plan administrator under section 502(a)(1)(B)." However, in *Curcio v. John Hancock Mutual Life Insurance Company*, 33 F.3d 226, 233 (3d

Cir.1994), the Third Circuit "considered whether a plaintiff could bring suit under section 502(a)(3)(B)'s equitable relief provision against a party other than the plan, and concluded that the plaintiff could proceed against a plan administrator who is also a fiduciary." *Briglia*, No. 03–6033, 2005 WL 1140687, at *5 (citing *Curcio*, 33 F.3d at 233)). District courts, such as the court in *Briglia*, have interpreted *Curcio* to mean that a "[p]laintiff may bring a 502(a)(1)(B) claim against a third-party plan administrator of a self-funded plan, but only if the third-party administrator is a fiduciary." *Id.* Resolution of the instant matter before the Court, however, focuses on the narrow question of whether WSC's state claims against CPS are completely preempted under ERISA. Therefore, for the purposes of this motion to dismiss, the Court need not address whether a fiduciary can be sued under Section 502(a)(1)(B) or whether CPS qualifies as a proper defendant under ERISA.

4   ERISA's savings clause saves from preemption certain self-funded ERISA plans set forth in the "deemer" clause, "which prevents state laws purporting to regulate insurance from deeming an employee benefit plan an insurance company." *Sparks v. Duckrey Enters.*, No. 05–2178, 2007 WL 320260, at *4 (E.D.Pa. Jan. 30, 2007) (citing *Pilot Life*, 481 U.S. at 45; 29 U.S.C. § 1154(b)(2)(B) (2006)). No "deemer" clause issue appears to apply here because the record does not indicate that any of the ERISA-governed plans to which WSC received an assignment of benefits were self-funded.

5   Even if the Court found that WSC had a valid savings clause claim, such a determination would not affect the outcome of this matter because "once ERISA preemption is found for jurisdictional purposes, jurisdiction will not be disturbed by any subsequent determination that state insurance law applies." *Wirth v. Aetna U.S. Healthcare*, 469 F.3d 305, 308 n. 4 (3d Cir.2006).

---

End of Document                                   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT C

2017 WL 1206005
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Jason D. COHEN, MD, FACS and Professional
Orthopaedic Associates, PA AS Assignee
and Designated Authorized Representative
of Patient JE, and Patient JE, Plaintiffs,
v.
HORIZON BLUE CROSS BLUE
SHIELD OF NEW JERSEY, Defendants.

Civil No.: 15-cv-4528 (KSH) (CLW)
|
Signed 03/31/2017

**Attorneys and Law Firms**

Jonathan Simeon Goodgold, Mitchell Craig Beinhaker, Beinhaker Law Firm, LLC, Millburn, NJ, for Plaintiffs.

Matthew A. Baker, Robert J. Norcia, Connell Foley LLP, Cherry Hill, NJ, for Defendants.

**OPINION**

Katharine S. Hayden, U.S.D.J.

**\*1** This matter comes before the Court upon a motion (D.E. 32) filed by plaintiffs to remand this case to New Jersey state court on the ground that plaintiffs' claims are not preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). For the reasons set forth below, plaintiffs' motion is denied.

**I. Background**
On or about May 15, 2015, plaintiffs filed a complaint in New Jersey state court seeking to recover benefits allegedly due for emergency medical services rendered to patient JE by Jason Cohen, a shareholder of Professional Orthopaedic Associates, PA ("POA"). Horizon Blue Cross Blue Shield of New Jersey ("Horizon") first received a copy of the complaint on May 27, 2015 and filed a timely notice of removal on June 26, 2015, pursuant to 28 U.S.C. § 1331 and § 1441(a) and (c), based on the position that plaintiffs "seek to recover benefits from Horizon under

the terms of an employee benefit plan governed by ERISA and bring[ ] claims for benefits within Section 502(a) of ERISA, 29 U.S.C. § 1132(a), over which this court has federal question jurisdiction pursuant to 28 U.S.C. § 1131." Plaintiffs filed an amended complaint (hereinafter, the "complaint") on December 7, 2015 (D.E. 19).

According to the complaint, Horizon is the plan administrator for JE's employer provided health insurance plan. (Compl., ¶ 4.) On or about January 6, 2014, Cohen and POA sought payment from Horizon by filing a claim for emergency surgery and procedures Cohen performed on JE. (Compl., ¶ 18.) The services provided were "out-of-network," meaning that Cohen and POA did not have a contract with Horizon to accept any agreed upon rates. (Compl., ¶¶ 20–21.) With respect to out-of-network services, JE signed certain agreements with Cohen and POA making him personally responsible for all medical charges and assigning all rights and benefits due from Horizon to them, including standing to appeal and/or sue on the basis of Horizon's claim payment decisions. (Compl., ¶¶ 13–17.)

On or about March 13, 2014, Horizon made a single payment of $100,507.58 on a claim that Cohen submitted for the above-referenced medical services. (Compl., ¶ 25.) On July 31, 2014, Horizon sent a refund request for $97,820.00, stating that it had overpaid for the services rendered to JE. (Compl., ¶ 26.) After denying an appeal by Cohen and POA, and in satisfaction of its refund request, Horizon allegedly "took back" $97,820.06 from claims being paid to Cohen by Horizon on behalf of 30 different patients it insured. (Compl., ¶ 31.) Cohen and POA then filed another appeal which was also denied, giving rise to the instant action.

The complaint pleads violations of N.J.A.C. 11:24-5.3 ("Emergency and urgent care services") and the New Jersey Healthcare Information and Technologies Act ("HINT"), in addition to a common law cause of action for unjust enrichment. Plaintiffs' motion to remand to state court on the basis that ERISA does not preempt claims for payment under N.J.A.C. 11:24-5.3 and HINT has been fully briefed (D.E. 32, 39, 40).

**\*2** The Court makes its decision on the papers.

**II. Standard of Review**

"Any civil action brought in state court may be removed by the defendant to the federal district court in the district where such action is pending, if the district court would have original jurisdiction over the matter." *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (citing 28 U.S.C. § 1441(a)). Thus, removal is not appropriate if the case does not fall within the district court's original federal question jurisdiction and the parties are not diverse. *Id.* The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).

"Under the well-pleaded complaint rule, a cause of action 'arises under' federal law, and removal is proper, only if a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353 (3d Cir. 1995). However, the Supreme Court has recognized an exception to the well-pleaded complaint rule. *Id.* "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).

## III. Analysis

Plaintiffs argue that remand is proper because their state law claims under N.J.A.C. 11:24-5.3 and HINT create legal obligations that are independent of the terms of an ERISA plan and thus do not fall within the scope of ERISA's preemption clause. ERISA contains a preemption clause providing that the act "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The Supreme Court has noted the "expansive sweep of the preemption clause [,]" *see Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 47 (1987), and, in a recent decision, elaborated on the current state of the ERISA preemption doctrine:

First, ERISA pre-empts a state law if it has a 'reference to' ERISA plans. To be more precise, where a State's law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ..., that 'reference' will result in pre-emption. Second, ERISA pre-empts a state law that has an impermissible 'connection with' ERISA plans, meaning a state law that governs ...

a central matter of plan administration or interferes with nationally uniform plan administration. A state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.' (quoting *N. Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)).

*Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (internal quotations and citations omitted).

With respect to N.J.A.C. 11:24-5.3, plaintiffs argue that the "New Jersey emergency care regulatory scheme requires no reference to JE's health benefit plan" and that "[n]othing in any health benefit plan is required to be interpreted or consulted in order for Horizon to do that which it is obligated to do under New Jersey law, i.e. pay for the emergency services rendered to its beneficiary in full for the emergency services rendered." Plaintiffs' Moving Br., at pp. 6–7. The Court disagrees.

**\*3** The very first line of N.J.A.C. 11:24-5.3 provides: "The *HMO* shall establish written policies and procedures governing the provision of emergency and urgent care which shall be distributed to each subscriber at the time of initial enrollment." (emphasis added). The HMO in question here is JE's *ERISA-governed*, employer-provided health insurance plan. Thus, the New Jersey state law at issue "acts immediately and exclusively" upon an ERISA plan in this case, and the existence of an ERISA plan is "essential to the law's operation [,]" such that reference to the plan results in preemption under the standards clarified in *Gobeille. See also 1975 Salaried Ret. Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992) (preemption proper where, "if there were no plan, there would have been no cause of action").

Plaintiffs cite *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*, 995 F.2d 1179, 1192 (3d Cir. 1993) for the proposition that state statutes of general applicability which do not single out ERISA plans are not subject to preemption. *See* Reply Br., at pp. 4–7. In *United Wire*, the Third Circuit held that New Jersey regulations concerning hospital rates were not preempted by ERISA, despite the fact that the regulations had an indirect economic impact on ERISA plans. Specifically, the *United Wire* court stated:

*Cohen v. Horizon Blue Cross Blue Shield of New Jersey, Slip Copy (2017)*

Where, as here, a State statute of general application does not affect the structure, the administration, or the type of benefits provided by an ERISA plan, the mere fact that the statute has some economic impact on the plan does not require that the statute be invalidated.

*United Wire*, 995 F.2d at 1194. Thus, plaintiffs argue, because the "the [New Jersey] regulations concerning payment of emergency services affect all insurance plans, not specifically those that are ERISA[,]" they are not preempted by virtue of the *United Wire* holding.

The Court disagrees. Even if N.J.A.C. 11:24-5.3 affects all insurance plans uniformly and does not single out ERISA plans, on its face it mandates five categories of emergency services that must be covered by HMOs in New Jersey, including, according to plaintiff, the ERISA-governed plan in this case. As set forth in full above, the *United Wire* holding only applies where "a State statute of general application does not affect the ... *types of benefits provided by an ERISA plan*...." *United Wire*, 995 F.2d at 1194 (emphasis added). Similarly, in both *Travelers* and *Gobeille*, the Supreme Court expressly noted that a state law can have "an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law *'force an ERISA plan to adopt a certain scheme of substantive coverage....'* " (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995)) (emphasis added). Because, under plaintiffs' proffered interpretation, N.J.A.C. 11:24-5.3 would affect the "types of benefits provided by an ERISA plan" and effectively "force an ERISA plan to adopt a certain scheme of substantive coverage[,]" it is preempted under prevailing Third Circuit and Supreme Court jurisprudence. [1]

Plaintiffs' purported cause of action under HINT fares no better. Pursuant to N.J.A.C. 11:22-1.5, payment of health insurance claims is required to be made within 30 days of receipt by the insurance carrier. Thus, plaintiff argues, because "more than (30) days has passed and Horizon has refused to make the required payment on the claim[,]" defendant has a state law cause of action under HINT, independent of JE's ERISA-governed plan, that is not preempted. Plaintiffs' Moving Br., at p. 6. Plaintiff's HINT argument fails for at least three reasons.

*4 First, as *Gobeille* makes clear, ERISA "seeks to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures." *Gobeille*, 136 S. Ct. at 943. Specifically, "ERISA plans must present participants with a plan description explaining, among other things, the plan's eligibility requirements and *claims-processing procedures*." *Id.* at 944 (emphasis added) (citations omitted). Thus, under *Gobeille*, a state law that provides procedures for the payment of claims would have an impermissible "connection with" the ERISA plan in this case because it "governs ... a central matter of plan administration[,]" namely, claims-processing procedures. *Id.*

Second, the 30-day time limit prescribed by N.J.A.C. 11:22-1.5 applies only to "clean claims," which means in part that "the claim is for a service or supply that is *covered by the health benefits plan*[.]" N.J.A.C. 11:22-1.2 (emphasis added). Thus, plaintiffs' claim under HINT for past due reimbursement is directly linked to plaintiffs' claim under N.J.A.C. 11:24-5.3 that JE's ERISA-governed plan is required to cover the emergency services in question. The Court's ruling that N.J.A.C. 11:24-5.3 is preempted by ERISA, and thus does not mandate the inclusion of additional benefits in JE's ERISA-governed plan, negates the alleged existence of a past due amount.

Finally, plaintiffs' position under HINT is that "Horizon paid the majority of the claim, and then took back all but $4,744.94 on that emergency treatment claim." Plaintiffs' Reply Br., at p. 6. Thus, although framed as a failure to pay a claim, there is no dispute as to whether the claim was paid. Rather, plaintiffs' HINT cause of action, at its core, hinges on whether the *amount* paid on the claim was calculated properly. The Third Circuit has held that "the calculation and payment of the benefit due to a plan participant" goes to "the essence of the function of an ERISA plan[.]" *Kollman v. Hewitt Assocs., LLC*, 487 F.3d 139, 150 (3d Cir. 2007). [2]

Because all of the claims alleged in the complaint are completely preempted by ERISA, the Court has original federal question jurisdiction over this action and plaintiffs' remand motion is denied.

**IV. Conclusion**

For the reasons set forth above, plaintiffs' motion to remand is **denied**. An appropriate order will be entered.

**All Citations**

Slip Copy, 2017 WL 1206005

Footnotes

1    Setting aside the fact that neither party addresses whether N.J.A.C. 11:24-5.3 provides a private cause of action in the first instance, plaintiffs have not cited—nor has the Court's independent search revealed—any authority that N.J.A.C. 11:23-5.3 mandates coverage of the enumerated emergency services by an ERISA-governed plan.

2    Although neither party addresses the issue of whether plaintiffs' unjust enrichment claim is preempted by ERISA, the Court finds that it is. Plaintiffs' standing to sue in this case derives from an assignment of benefits that JE executed granting plaintiffs the right to recover amounts due under an ERISA-governed plan, and their unjust enrichment cause of action amounts to an allegation that Horizon "improperly withheld payment" that plaintiffs expected to receive as an assignee of benefits under an ERISA-governed plan. Plaintiffs' provide no case law allowing an out-of-network physician or medical practice to proceed on an unjust enrichment claim against a plan administrator based upon payment made for services provided to a plan participant, and the Court finds that plaintiffs' unjust enrichment claim involves "the calculation and payment of the benefit due to a plan participant" which goes to "the essence of the function of an ERISA plan[.]" *Kollman v. Hewitt Assocs., LLC,* 487 F.3d 139, 150 (3d Cir. 2007).

---

**End of Document**                          © 2017 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT D

Case 3:17-cv-13109-FLW-LHG  Document 11-2  Filed 01/04/18  Page 27 of 30 PageID: 385

North Jersey Brain & Spine Center v. Connecticut General..., Not Reported in...

KeyCite Yellow Flag - Negative Treatment

Disagreed With by MHA, LLC v. Aetna Health, Inc., D.N.J., February 7, 2013

2011 WL 4737063

Only the Westlaw citation is currently available.

NOT FOR PUBLICATION

United States District Court, D. New Jersey.

NORTH JERSEY BRAIN &
SPINE CENTER, Plaintiff,

v.

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY, Defendant.

Civil Action No. 10–cv–4260 (SDW).
|
Oct. 6, 2011.

**Attorneys and Law Firms**

Eric D. Katz, Mazie, Slater, Katz & Freeman, LLC, Roseland, NJ, for Plaintiff.

Eric Evans Wohlforth, Gibbons, P.C., Newark, NJ, for Defendant.

## OPINION

WIGENTON, District Judge.

*\*1* Before this Court is Plaintiff North Jersey Brain & Spine Center's objections to Magistrate Judge Madeline Cox Arleo's Report and Recommendation ("R & R") denying Plaintiff's motion to remand this action to the Superior Court of New Jersey. Defendant Connecticut General Life Insurance Company ("CGLIC") opposes Plaintiff's objections. Also before the Court is Defendant's motion to dismiss Plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court has jurisdiction pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court **ADOPTS** the Report and Recommendation by Judge Arleo, **DENIES** Defendant's motion to dismiss.

## I. Background

The facts and procedural history are recited briefly. Plaintiff is a neurosurgical medical practice located in New Jersey, which specializes in surgery and treatment of the brain and spinal cord. (Am.Compl.¶ 1.) Plaintiff is an out-of-network medical practice that provides medical services to individuals who are enrolled in healthcare plans provided, operated, controlled, and/or administered by CGLIC. (Am.Compl.¶¶ 1, 3.) Before providing medical services to participants of CGLIC's plan, Plaintiff, through a representative, allegedly contacted a CGLIC representative who verified that the patients had out-of-network coverage and that CGLIC would pay the agreed upon usual, customary, and reasonable ("UCR") fees. (See id. at ¶ 5.) Relying on t he CGLIC representative's statements, Plaintiff rendered the medical services to the patients, e.g. R.L and N.I.; however, CGLIC subsequently reimbursed Plaintiff less than the agreed upon amount. (See id.)

On June 28, 2010, Plaintiff filed the instant action in the Superior Court of New Jersey, Bergen County.[1] Plaintiff asserted claims for promissory estoppel, unjust enrichment, and negligent and intentional misrepresentation. On August 18, 2010, CGLIC removed the case to this court based on federal question jurisdiction due to ERISA preemption. On November 24, 2010, Plaintiff filed a motion for remand disputing ERISA preemption, asserting lack of diversity jurisdiction and that the amount in controversy is only $63,000 based on outstanding fees owed for medical services rendered to R.L. and N. I.[2]

On June 30, 2011, Judge Arleo rendered a R & R proposing that Plaintiff's motion be denied on the grounds of subject matter jurisdiction and ERISA preemption. Plaintiff objects to Judge Arleo's R & R arguing that: (1) its well-pleaded complaint sets forth only state law claims that are unfettered by ERISA, (2) its claims are not completely preempted by ERISA because Plaintiff does not have derivative standing to sue, and (3) the claims in the complaint arise under an independent state law duty that concerns neither ERISA nor CGLIC plan documents. CGLIC maintains that Plaintiff's objections should be denied because, among other things: (1) Plaintiff is able to bring its claims under ERISA as an assignee of its patients, (2) Plaintiff's claims are not supported by any legal duty independent of ERISA, and (3) Plaintiff's claims

Case 3:17-cv-13109-FLW-LHG   Document 11-2   Filed 01/04/18   Page 28 of 30 PageID: 386

North Jersey Brain & Spine Center v. Connecticut General..., Not Reported in...

will require interpretation of the terms of the Plans. The Court will address each of Plaintiff's objections below.

## II. Motion to Remand

### a. Discussion

### i. Standard of Review

**\*2** Review of a Magistrate Judge's R & R, as well as objections to it, is governed by Local Civil Rule 72.1. The rule provides that the Court "shall make a *de novo* determination of those portions [of the R & R] to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." L. Civ. R. 72.1(c)(2). In conducting its review, the Court "may consider the record developed before the Magistrate Judge, making [its] own determination on the basis of that record." *Id.,* see also *State Farm Indem. v. Fornaro,* 227 F.Supp.2d 229, 231 (D.N.J.2002).

### ii. State Law Claims

While typically a pleading determines whether a complaint is subject to state or federal law, *see Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), "in certain circumstances the preemptive force of the federal law" can completely preempt state law causes of action despite the "well-pleaded complaint" rule. *Dawson v. Ciba–Geigy Corp. USA,* 145 F.Supp.2d 565, 568 (D.N.J.2001) (citing *id.* at 63–65). In fact, a court may "look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 274 (3d Cir.2001) (quotations omitted).

Here, Plaintiff argues that the complaint asserts facts and causes of action that are actionable only under state law and that do not raise a federal question. (*See* Pl.'s Br. 4.) Further, Plaintiff emphasizes that it is axiomatic that the party bringing suit is the master of its complaint, and therefore decides the law under which its claim(s) will be advanced. (*See id.* at 5.) However, considering the rule set forth in *Dawson,* Plaintiff's argument that the complaint controls the law to be applied to his claims must fail.

### iii. ERISA Preemption

The doctrine of complete preemption permits removal of an action to federal court when (1) a federal statute wholly displaces a state law claim and creates a superseding claim, and (2) there is a "clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor Execs. Ass'n v. Pittsburg & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988). Where there is complete preemption, removal is proper even if federal claims are not asserted in the complaint. *Rivet v. Regions Bank of La.,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998). Pursuant to the test enumerated in *Pascack Valley Hospital v. LOCAL 464A UFCW Welfare Reimbursement Plan,* removal is proper in the context of ERISA only if "(1) the [plaintiff] Hospital could have brought its ... claim under § 502(a) [of ERISA], and (2) no other legal duty supports the [plaintiff] Hospital's claim." *Pascack Valley Hosp. v. LOCAL 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir.2004). Plaintiff argues that its claims are not completely preempted by ERISA because (1) it does not have derivative standing and (2) the claims in the complaint arise under an independent state law duty that does not concern ERISA or CGLIC plan documents. Regarding derivative standing, Plaintiff cites a plethora of cases to buttress its contention. *See e.g. N. Jersey Ctr. For Surgery, P.A. v. Horizon Blue Cross Blue Shield of N.J., Inc.,* No. 07–CV–4812, 2008 WL 4371754 (D.N.J. Sept. 18, 2008), *Cooper Hosp. Univ. Med. Ctr. v. Seafarers Health & Benefits Plan,* No. 05–CV–5941, 2007 WL 2793372 (D.N.J. Sep. 25, 2007), *Comty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan,* 143 F. App'x 433 (3d Cir.2005).[3] Plaintiff's reliance on these cases is flawed because in each cited case, the court did not find standing due to the absence of proof of an actual assignment of benefits. Contrarily, in this case, as Judge Arleo correctly noted, the executed "INSURANCE AUTHORIZATION AND ASSIGNMENT" form unequivocally establishes that the only benefit at issue, i.e., benefit of reimbursement, was in fact assigned.[4] *See Comty. Med. Ctr.,* 143 F. App'x at 436; *Wayne Surgical Ctr., LLC,* No. 06–CV–928, 2007 WL 2416428 (D.N.J. Aug. 20, 2007). Accordingly, the first *Pascack* prong is satisfied.

**\*3** Regarding Plaintiff's argument concerning the second *Pascack* prong, Plaintiff has failed to show that its claims are not related to the terms of the CGLIC plan. Plaintiff fails to acknowledge that in its amended complaint, it alleges that CGLIC promised to pay Plaintiff the usual

Case 3:17-cv-13109-FLW-LHG   Document 11-2   Filed 01/04/18   Page 29 of 30 PageID: 387

North Jersey Brain & Spine Center v. Connecticut General..., Not Reported in...

customary and reasonable fee prior to Plaintiff's rendering of medical services to the patients involved. Accordingly, Plaintiff's "state law claims do not arise via independent contract terms, but rather from an ERISA governed reimbursement amount dispute for which [Plaintiff] is a valid patient benefit assignee." *Ambulatory Surgical Ctr. of New Jersey v. Horizon Healthcare Servs., Inc.*, No. 07–2538, 2008 U.S. Dist. LEXIS 13370, at *14–15 (D.N.J. Feb. 21, 2008. As Judge Arleo stated, "[P]laintiff's claims for promissory estoppel and unjust enrichment seek reimbursement of billed medical charges and relate to challenges to the administration' of benefits rather than the quality of the medical treatment performed'." Report and Recommendation, *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.*, No. 10–CV–04260 (D.N.J June 30, 2011), ECF No. 28 at 10 (citing *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 273 (3d. Cir.2001)). As Plaintiff has failed to show through its objections that the *Pascack* test has not been satisfied, Plaintiffs claims are completely preempted by the ERISA statute.

Plaintiff did not object to Judge Arleo's conclusion regarding subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Therefore, this Court does not discuss that portion of the R & R.

### III. Motion to Dismiss

CGLIC moved to dismiss Plaintiff's amended complaint on the grounds that (1) Plaintiff's claims were completely preempted by ERISA and (2) alternatively Plaintiff's state claims were factually deficient. This Court concludes that this opinion renders Defendant's motion to dismiss partially moot. To the extent that this opinion does not touch on Defendant's motion, this Court concludes that Plaintiff's claims are pled sufficiently enough to warrant a counter-pleading.

### IV. Conclusion

For the reasons stated above, this Court **ADOPTS** the Report and Recommendation by Judge Arleo, and **DENIES** Defendant's motion to dismiss.

### All Citations

Not Reported in F.Supp.2d, 2011 WL 4737063

### Footnotes

1   Plaintiff originally sued CIGNA Corporation and CIGNA Healthcare of New Jersey ("CIGNA"); however, the parties entered into a stipulation by which CGLIC, a CIGNA-affiliate, was named the proper defendant. CIGNA was dismissed as a party, and Plaintiff, by consent, filed an amended complaint properly suing CGLIC.

2   Notably, on April 13, 2009, Plaintiff filed a nearly identical action against CIGNA. Both the current lawsuit and the April 2009 lawsuit involve the same factual dispute and the same assertions by Plaintiff. *Compare* Am. Compl., *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.* No. 10–CV–4260 (D.N.J Nov. 12, 2010), ECF No. 9, *with* Compl., *N. Jersey Brain & Spine Ctr. v. Connecticut Gen. Life Ins. Co.* No. 09–CV–2630 (D.N.J April 10, 2009), ECF No. 1, Ex. 1. In the April 2009 lawsuit, Plaintiff's claims were also removed by the defendant, and Plaintiff also sought a remand. The court ultimately found that removal was proper, and on March 5, 2010 Judge Joseph A. Greenaway adopted the Report and Recommendation denying Plaintiff's remand motion. On March 15, 2010 CIGNA moved to dismiss Plaintiff's complaint. Two days later, Plaintiff filed a notice of voluntary dismissal without prejudice. Three months later, Plaintiff filed the instant action.

3   Plaintiff also relies on *Memorial Hospital Systems v. Northbrook Life Insurance Company* 904 F.2d 236 (5th Cir.1990) and its progeny. Plaintiff's reliance on *Memorial* is misplaced as footnote twenty in that case discusses a previous Fifth Circuit holding that cuts against Plaintiff's argument. In *Hermann Hospital v. MEBA Medical & Benefits Plan*, 959 F.2d 569 (5th Cir.1992), the Fifth Circuit considered a provider's grievance concerning a plan's delay in processing the provider's claim and the recovery of plan benefits that were assigned to the provider by a beneficiary. The Fifth Circuit held that as a hospital, the plaintiff had derivative standing as an assignee of plan benefits since the claims were dependent and derived from the rights of the plan's beneficiaries to recover benefits under the terms of the plan.

4   Plaintiff also argued that CGLIC should be judicially estopped from arguing that the assignment in this case regarding the right to reimbursement is a complete assignment because in *Franco v. Connecticut General Life Insurance Co.*, No. 07–Civ–6039, 2011 WL 4448908 (D.N.J. Sept. 23, 2011), CGLIC argued the assignment of the right to reimbursement in that case was not a complete and unequivocal assignment such that it would allow for derivative standing under ERISA. Considering the (1) factual differences between this case and *Franco*, namely that in *Franco* there was no evidence of an actual assignment, and (2) the nature of statements at issue, this Court finds Plaintiff's argument meritless.

North Jersey Brain & Spine Center v. Connecticut General..., Not Reported in...

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.